AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

UNITED STATES OF AMERICA

vs.

MICHAEL EUGENE RUDKIN

**CRIMINAL COMPLAINT**

CASE NUMBER: 5:09-mj-1044-GRJ

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. Between on or about June 2009 and August 2009, in Sumter County, in the Middle District of Florida, defendant did,

> utilize interstate commerce facilities in the commision of murder for hire and attempt to retaliate against a witness, victim, or an informant

in violation of Title 18, United States Code, Sections 1958 and 1513. I further state that I am a Special Agent with Department of Justice - Office of Inspector General, and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:  ☒ Yes  ☐ No

_____
Signature of Complainant
Wendell Dulay

Sworn to before me and subscribed in my presence,

September 11, 2009                    at    Ocala, Florida

GARY R. JONES
United States Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT

I, Wendell M. Dulay, being duly sworn and appointed a Special Agent with the Department of Justice Office of the Inspector General (DOJ OIG), hereby make the following statement in support of the attached criminal complaint.

1. I am a Special Agent with the DOJ OIG and have been since January 2005. Between October 1999 and January 2005, I was a Special Agent with the Naval Criminal Investigative Service. Additionally, I have five years of local law enforcement experience as a Deputy Sheriff with the Escambia County (FL) Sheriffs Office. I have conducted investigations concerning the Bureau of Prisons (BOP) since 2005. I am currently assigned as the Tampa Domicile agent with DOJ OIG.

2. DOJ OIG is currently investigating Michael Rudkin (RUDKIN), a BOP inmate, incarcerated at the Coleman Federal Correctional Complex, Coleman, Florida, Low Security Institution (Coleman LSI). At this time, and for reasons detailed below, it is believed that RUDKIN has utilized interstate commerce facilities in the commission of murder for hire and was actively attempting to retaliate against a witness, victim, or an informant. As such, this activity constitutes one or more violations of Title 18, United States Code, Section 1958 (Use of Interstate Commerce Facilities in the Commission of Murder for Hire) and Title 18, United States Code, Section 1513 (Retaliating Against a Witness, Victim, or an Informant) as further detailed below.

3. Your affiant is submitting this affidavit to establish probable cause to support a criminal complaint against RUDKIN for violations of Title 18, United States Code, Section 1958 (Use of Interstate Commerce Facilities in the Commission of Murder for Hire) and Title 18, United States Code, Section 1513 (Retaliating Against a

Witness, Victim, or an Informant). As such, your affiant is not including all facts known to your affiant regarding this investigation in this affidavit, but rather only those your affiant believes are necessary to establish probable cause.

4. RUDKIN is a former BOP Correctional Officer who was assigned to the Federal Correctional Institution in Danbury, Connecticut. In January 2008, DOJ OIG initiated an investigation into allegations RUDKIN had sexual contact with a female inmate. This investigation was conducted by a DOJ OIG Special Agent assigned to the New York Field Office (NYFO). During the sexual abuse investigation, evidence became available that RUDKIN solicited the assistance of the female inmate to have his wife murdered. RUDKIN eventually pled guilty to violations of Title 18, United States Code, Section 1958 (Use of Interstate Commerce Facilities in the Commission of Murder for Hire) and Title 18, United States Code, Section 2243 (Sexual Abuse of a Ward), and in January 2009 was sentenced. RUDKIN arrived at the Coleman LSI on or about April 2009 to begin his sentence.

5. On or about June 2009, inmate #1, who was incarcerated at Coleman LSI, provided information to the DOJ OIG that RUDKIN solicited inmate #1 and inmate #2's assistance in RUDKIN'S plan to have his wife, her current boyfriend "Ken", the female inmate in his previous case, and the NYFO Special Agent who previously investigated him murdered. RUDKIN provided inmate #1 with a handwritten note that included physical descriptions, geographical locations, and what he wanted done to his intended victims. RUDKIN asked inmates #1 and #2 to find someone on the outside who could arrange for these victims to be murdered. RUDKIN told inmates #1 and #2 that he would be willing to meet with this person during Coleman LSI visitation hours to discuss

furthering his murder for hire plan.

6. Inmates #1 and #2 provided RUDKIN a name and an address of an individual who could arrange to have his intended victims murdered. This individual was a DOJ OIG undercover agent (UCA). RUDKIN sent the UCA two letters, via United States Postal Service, that included BOP inmate visitation request forms and handwritten letters in which RUDKIN expressed his willingness to meet with the UCA. On July 24, 2009, the UCA's name was added to RUDKIN's list of approved visitors.

7. On July 30, 2009, the UCA met with RUDKIN at the Coleman LSI during scheduled inmate visitation hours. During the meeting, RUDKIN provided the UCA with the names, physical description, and geographical locations of his intended victims. RUDKIN also told the UCA how RUDKIN intended to pay the UCA for carrying out these murders. RUDKIN told the UCA that he understood that the victims were going to be killed and that he would not be talking with the UCA if he was not serious about making sure these murders happen. RUDKIN told the UCA that he would be sending the UCA a quantity of U.S. currency so that the UCA could initiate these murders.

8. At the conclusion of the meeting, RUDKIN submitted paperwork to the BOP requesting that a quantity of U.S. currency be sent to the UCA from his BOP inmate account. On August 10, 2009, a U.S. Treasury check made payable to the UCA, in the amount that RUDKIN said he would send the UCA, was received at the UCA address. The U.S. Treasury check received was generated from RUDKIN's BOP inmate account.

9. On August 16, 2009, inmate #1 advised your affiant that RUDKIN had solicited the assistance of inmate #3 to murder the female inmate in his previous case.

RUDKIN advised inmate #1 to notify the UCA not to worry about the female inmate, because he requested inmate #3 to coordinate her murder. RUDKIN provided inmate #3 with handwritten letters in which RUDKIN describes the female inmate, the female inmate's family, and possible locations where she may be residing.

10. Based on the foregoing, your affiant has probable cause to believe that between June 2009 and August 2009, MICHAEL RUDKIN, utilized interstate commerce facilities in the commission of murder for hire in violation of Title 18, United States Code, Section 1958 and was attempting to retaliate against a witness, victim, or an informant in violation of Title 18, United States Code, Section 1513.

11. Further your affiant saith naught.

Wendell M. Dulay
Special Agent
Department of Justice
Office of the Inspector General

Subscribed and sworn to before me this 11th day of September, 2009.

_____
GARY R. JONES
United States Magistrate Judge